DANIEL F. GUNN, plaintiff in error, vs. WILLIAM H. CALHOUN, defendant in error.

The verdict in this case is not contrary to the evidence, except as to the amount of $150 00 per annum, found for the complainant against the defendant, for four years' use of the land in controversy, the profits derived from such use not exceeding the just claim of defendant against complainant, and, therefore, if the complainant will write off this amount from his verdict the judgment should be affirmed, otherwise reversed. (R.)

New trial. Verdict. Practice in the Supreme Court. Before Judge COLE. Houston Superior Court. June Term, 1872.

This case arose upon a bill filed by William H. Calhoun against Daniel F. Gunn, setting up that Calhoun having been in possession of certain lands under bond for titles from one Griffin, the same were sold at sheriff's sale in 1856, under an execution in favor of Griffin, for the purchase money, Griffin having filed a deed ; that an agreement was made before the sale between Calhoun and Gunn that Gunn should buy the land for Calhoun, he (Calhoun) to repay Gunn what he should pay, with interest at ten per cent., Calhoun to retain posses-

Gunn vs. Calhoun.

sion; that under this agreement Gunn had bid off the land for $1,580 00. The bill charged that at various times afterwards Calhoun had paid moneys to Gunn in discharge of his agreement until the whole amount, with interest, was repaid. That Calhoun had retained the possession, had improved the land by clearing and building, and had kept the quiet possession from 1856 to 1868; that Gunn, in December, 1868, had ousted him as a tenant holding over, he (Calhoun) not being able to give the bond required to resist the warrant procured against him as his tenant. The bill prayed that Gunn should make titles and account for the rents from 1868.

The answer was waived. The defendant set up a denial of the agreement—set up that the complainant was, at the time of the sale, in his debt, under a mortgage on the land for over $1,000 00; that he had bought the land for himself and as his own; that after the sale he had agreed to rent the land to complainant for ten per cent. per annum on the amount of the bid, the bid being $1,540 00; that defendant had paid him certain moneys before and during and since the war, but the same were in discharge of the mortgage debt and the rent.

Both the parties were sworn as witnesses, and both sustained their own statement of the case, Calhoun admitting the mortgage on its being presented to him, but insisting that his payments, especially the payments of $500 00, $1,000 00 and $200 000, were made by him on the debt for the land. He also proved that he had built upon the land and cleared a good deal of it, and that Gunn had never said anything to him about rent until the warrant in 1868. It was also proved by Calhoun himself that the rent was now worth $2 00 per acre, and that over three hundred acres were cleared.

It was in proof that Calhoun had been in possession from 1856 to 1868, giving the land in for taxes and claiming it as his own. The evidence as to the payments was conflicting. It was also proven by a witness that Calhoun, for several years before 1868, had rented out the land to other persons— the tenants never hearing of any claim by Gunn.

The jury found for the complainant, and decreed that Gunn

Gunn *vs.* Calhoun.

should make the titles and pay Calhoun $150 00 per annum for four years, for his use of the land.

The defendant moved for a new trial upon the following grounds :

1st. Because the Court erred in refusing to allow counsel for defendant to ask complainant when on the stand as a witness, the value of the $1,000 00 in Confederate money which he paid in 1864.

(NOTE BY THE JUDGE).—"I refused this because the defendant had received it and credited that amount to complainant."

2d. Because the Court erred in charging the jury, " that if they believed from the evidence that the complainant and the defendant entered into a parol agreement before, or at the sheriff's sale, for Gunn to bid off the land for Calhoun, and for Calhoun to remain in possession until he repaid to Gunn the purchase money with interest, and if Gunn bid it off and allowed Calhoun to remain in possession according to this agreement, and if Calhoun had repaid to Gunn the purchase money with interest according to contract, or a considerable part of it, then they should find the land for complainant, first requiring complainant to pay whatever they might believe was still due, if any, on the land to Gunn, and that they should do this whether the mortgage debt, or any other debt owing by Calhoun to Gunn, if such existed, had been paid.

3d. Because the verdict is contrary to law and the evidence.

The motion was overruled, and defendant excepted upon each of the aforesaid grounds.

WARREN & GRICE; LANIER & ANDERSON, for plaintiffs in error.

S. HALL; DUNCAN & MILLER, for defendant.

McCAY, Judge.

This case turns almost exclusively upon the facts. The principles of law involved are undisputed. Taking this as a contract, not good because it is in parol, unless it have been

Gunn *vs.* Calhoun.

partly performed, it is admitted that before specific performance of it will be decreed, its terms must be plainly made out, such performance by the complainant must be proved as would make it a fraud for the defendant to repudiate it, and the Court must be satisfied from the evidence that the contract was in fact made. It seems to us that these conditions are fully complied with. Indeed the evidence that there was such a contract as the bill sets forth is very strong. The oath of the complainant is, it is true, met by the denial of the defendant, but the circumstances furnish proof that, in our judgment, makes the complainant's evidence largely preponderate. That the complainant should have remained in possession for twelve years, without any passages of any kind between the parties, as landlord and tenant, is very strange, if defendant be right, and this is admitted even by the defendant himself, for he does not even claim that during all that time he ever spoke on the subject of tenancy or rent. True, he says he considered the balance of the Confederate money left after paying the mortgage, as a credit on his debt for rent, but he did not tell this to the complainant. It seems, too, incontestible that the complainant was clearing the land, building upon it, and openly claiming as his own, for twelve years, and this with defendant a close neighbor. It is also in proof, and this is to our minds evidence very hard to overcome, that complainant for several years before 1868, did not himself live upon the land, but rented it to third persons. Is it conceivable that the owner of land will lie quietly by and permit one whose only right to it is that of a tenant—a tenant, too, who regularly neglects to pay rent—to rent it out to third persons, year after year? And that the possession was quiet is proven not only because he did not retake the possession, but because the witness says he never heard of any claim by the defendant.

As to the payments, it is true the evidence is not so satisfactory. The complainant and the defendant agree neither as to the amount nor the object of these. If the complainant's story as to the receipts and the destruction or detention of them by defendant be true, the presumption is all in favor of

full payment.   The entries on the note by defendant, and especially the pencil memoranda, as well as his failure to call the witness who was present when the credit was made, are not satisfactory to our mind.   The memory of the complainant, old as he is, cannot, doubtless, be depended upon as to dates and amounts, as is apparent from the fact that he only remembers a payment of $500 00 anterior to the Confederate money payment, while the defendant's own credit on the note itself shows that previously to that time he had made payments which entitled him to a credit on the mortgage of the date of 19th February, 1856, of $1,091 00.  The mortgage debt was for $ ........, due 18th November, 1854.   A payment dated 18th February, 1856, would reduce this debt, including the $40 00, to a little over $200 00.   Now it is strange that the defendant should take $1,000 00 afterwards from complainant and put that as a credit on this note, saying nothing of the overplus, and it is equally strange that this credit of 18th of February, 1856, should have been dated back to that date.   Why do this?   All the payments of which it was made up were, as defendant says, made after 1st January, 1855. Why fix 18th February, 1856, as a date for the credit.   For convenience of counting interest?   The note was due 18th November, 1854.   There is no harmony between 18th November and 18th February, no convenience in counting interest on a note due 18th November, 1854, procured by having the credit 18th February, 1856.   To say that this is the result of the average of the several payments is also strange. How few people, if called upon to put several payments on a note, would average them according to the rule, and put them in the note at the date produced by the average.   Nor does the memorandum in pencil enlighten us.   It is, on its face, an after thought.   It is suspicious.   Altogether we cannot help thinking this $1,091 00 credit was an independent payment which the old man had made, and thus it, with the very existence of the debt, has passed out of his memory.

Nor are we prepared to say that the complainant is not entitled to the full nominal value of the Confederate money.

Defendant received it as a *payment*. Complainant says generally; defendant says upon the mortgage and rent, though he admits he did not specify any other debt than the mortgage debt; and, under the facts, we should not interfere with the verdict, though it be based on the idea that this money is to be taken as a credit generally, at its nominal value. When it was tendered as a payment he had a right to refuse it. He did not refuse, but took it—took it as money. Is it a harsh presumption to say he took it as everybody then took it—for what it purported to be—money according to its face value? We think not.

But assuming, as we feel bound to do under the evidence, that the contract is fully made out, and that there was a strong case of part performance, if not full performance proven, there is left to make up the balance the use of the place from 1868 to the trial. Under the proof *that might be* from \$150 00 to \$600 00—a large margin. We think the evidence of the payment of both debts is not made out except by the use of this off-set. The jury have evidently given the complainant what they thought the full value of the premises for four years. We think the evidence does not sustain this; that it will take all of this to pay the complainant in full, and we therefore put our affirmance on condition that the plaintiff write off this money verdict.

Judgment affirmed.